IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

BMS NATURAL RESOURCE, INC.,

                Plaintiff,

v.                                         CIVIL ACTION NO. 3:10-1261

MARTIN COUNTY LAND CO. LLC and
JOHN P BAUGUES, JR.

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending is the defendants' motion to dismiss counts three and four of the amended complaint. [Doc. 20]. For the reasons that follow, the Court **GRANTS** the motion in part and **DENIES** it in part. Moreover, the Court **ORDERS** the plaintiff to re-file the complaint in the manner directed by this opinion.

**I.    Background and Procedural History**

BMS Natural Resource, Inc. ("BMS") filed this action on September 22, 2010 in the Circuit Court of Cabell County, West Virginia against Martin County Land Company, LLC ("Martin County"), and John P. Baugues, Jr. (collectively, the "defendants"), alleging claims for breach of contract and fraud. Mr. Baugues, at times relevant to this action, was the president and general manager of Martin County. Martin County is a Delaware corporation that does business nationwide. BMS is a West Virginia corporation. The material facts are as follows.

BMS alleges that, sometime before September 21, 2009, a meeting took place between Mr.

Baugues, one of his business partners, and Roger Ball, the president of BMS. At this meeting, BMS alleges that Mr. Baugues represented that he had the full experience, expertise, and capital necessary to go forward with a lease of 2,675 acres of mineral and surface interests in Kanawha County, West Virginia (the "O'Dell property"). Further, at the meeting, Mr. Baugues assured Mr. Ball that he "could put the deal together quickly and capital would not be a problem." Pl.'s Am. Compl. 2, No. 22. To that end, he allegedly represented that a company in Amsterdam would be the principal financial backer of the deal.

While the complaint is not entirely clear, it seems that BMS was to serve as Martin County's exclusive agent in facilitating the deal, and was to be paid a total of $8,000,000 for finalizing the underlying transaction—$500,000 payable upon execution, and the rest at closing. While Martin County transmitted $500,000 to BMS upon execution of the lease, it has yet to pay the remainder of the contractual balance. It is BMS's contention that Mr. Baugues fraudulently mislead Mr. Ball in making promises that it had the ability to pay the agency fee.

On October 27, 2010, the defendants timely removed this action, and filed a motion to dismiss count two of BMS's complaint on the ground that it failed to allege fraud with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. Subsequently, on November 12, 2010, BMS responded by filing a motion for leave to amend the complaint. BMS's proposed amended complaint was submitted six days later. The Court granted BMS's request to amend, and rejected the defendants' argument that amendment was futile.

In the amended complaint, BMS has added claims for punitive damages and for relief under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.* The defendants now move to dismiss these new claims.

**II.     Discussion**

The defendants have filed a motion to dismiss counts three and four of BMS's amended complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Under Rule 12(b)(6), the factual allegations in the complaint must be taken in the light most favorable to the plaintiff. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993) ("In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff."). The complaint must nonetheless consist of more than mere "labels and conclusions," and contain facts sufficient "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. Plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

Count three of the amended complaint states a claim for punitive damages. Count four asserts a civil RICO claim. The Court addresses both counts in turn.

**A.     Punitive Damages**

The defendants first seek to dismiss count three on the ground that BMS's complaint does not entitle it to punitive damages as a matter of law. The defendants correctly note that under West Virginia law punitive damages are generally unavailable at trial for a breach of contract claim. *See C.W. Dev. v. Structures, Inc.*, 408 S.E.2d 41, 45 (W. Va. 1991). However, punitive damages are available where the plaintiff shows "malice, fraud, oppression, or gross negligence." *See Warden v. Bank of Mingo*, 341 S.E.2d 679, 684 (W. Va. 1985); *see also Prestige Magazine Co. v. Panaprint, Inc.*, No. 3:09-0314, 2010 U.S. Dist. LEXIS 114097, at *16-17 (S.D. W. Va. Oct. 26, 2010).

Inasmuch as the Court has already determined that BMS has stated facts sufficient to withstand a motion to dismiss its fraud claim, a claim for punitive damages based on that conduct—however unclear it may be—simply cannot be dismissed at this point in the proceedings. As the Court has previously noted, the defendants may, at the appropriate time, file a motion for summary judgment to dismiss these claims if BMS fails to supplement them with sufficient facts after discovery.

Therefore, the motion to dismiss count three is **DENIED**.

### B. RICO

BMS also purports to state a civil RICO claim in count four of the amended complaint. Pertinently, it states as follows:

> The defendant, John P[.] Baugues[,] Jr. is conducting a shell games [sic] whereby coal properties are obtained without sufficient funding to execute the leases are then permited [sic], or certified titles obtained to eventually leverage the properties and subsequently use those funds on other properties that are in default. . . . [Mr. Baugues] further uses misrepresentations more specifically set forth supra as to his investors and financial backing to continually obtain more coal properties he knows he does not have the resources to acquire.

Pl.'s Am. Compl. 6, No. 22. BMS further alleges that these misrepresentations are forwarded on the internet, by the mail, and through the phone lines, constituting mail and wire fraud.

RICO is a "unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *U.S. Airline Pilots Ass'n v. AWAPPA, LLC*, 615 F.3d 312, 317 (4th Cir. 2010) (quoting *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006)). To state a civil RICO claim under 18 U.S.C. § 1962(c), a plaintiff must show a pattern of racketeering activity. *See Toucheque v. Price Bros. Co.*, 5 F. Supp. 2d 341, 345 (D. Md. 1998) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). The defendants contend that BMS has failed to satisfy this burden.

### 1. Racketeering Activity

While BMS's allegations are not entirely clear, they purport to establish that Mr. Baugues made misrepresentations to other companies in prior business deals through the mail, internet, and phone lines, constituting wire and mail fraud, and the racketeering activity needed to state a RICO claim.

Mail and wire fraud may constitute "racketeering activity" under the RICO statute. *See Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000). To make out a case for mail fraud, the plaintiff must show (1) a scheme to defraud and (2) the physical mailing of a letter or other item. *See Foster v. Wintergreen Real Estate Co.*, No. 08-2356, 2010 U.S. App. LEXIS 2050, at *9-10 n. 5 (4th Cir. Jan. 29, 2010) (quotation omitted). The elements of wire fraud are similar with the exception that they apply to the use of electronic or telephonic communication. *Id.*

Under Rule 9(b) of the Federal Rules of Civil Procedure, all averments of fraud, and the circumstances surrounding it, must be stated with particularity. Fed. R. Civ. P. 9(b). The Fourth Circuit has noted that the items to be plead with particularity include the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

Here, the amended complaint states that Mr. Baugues's misrepresentations were "forwarded on the internet, by mail and by phone . . . constituting mail and wire fraud . . . ." Pl.'s Am. Compl. 6, No. 22. This statement does not include one fact showing how Mr. Baugues engaged in mail or wire fraud. It does not identify the parties to whom the misrepresentations were directed. Nor does it identify their contents or when they were made. It is simply a blanket conclusion that Mr.

Baugues made misrepresentations through the phone lines, the mail, and the internet.[1]

The only other potential activities that could stand as examples of BMS's allegations of a fraudulent scheme are provided in count three where BMS seems to identify a few of Mr. Baugues's prior business deals. Even if the Court construes these instances as allegations of racketeering activity for purposes of count four, BMS has still failed to show how they suggest a scheme to defraud other business entities. As alleged, they exhibit at the very worst situations where Mr. Baugues and Martin County perhaps breached their contracts in other contexts. Poor business acumen is not racketeering activity for purposes of RICO.

For these reasons, BMS has "failed to plead sufficient facts to satisfy the heightened pleading requirement for averments of mail and wire fraud as predicate racketeering activities sufficient to support a RICO claim." *Cooke & Moses, LLC v. QSS-Engineered Sys. Group, LLC*, No. 1:06-147, 2007 U.S. Dist. LEXIS 63650, at *27 (N.D. W. Va. Aug. 28, 2007).

### 2. "Pattern"

"For a pattern of racketeering activity to exist, 'two or more predicate acts of racketeering must have been committed within a ten year period.'" *Foster*, 2010 U.S. App. LEXIS 2050, at *9 (quoting *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 181 (4th Cir. 2002)); *see also* 18 U.S.C. § 1961(5). Further, to establish a "pattern," the plaintiff "must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989) (emphasis in original).

Relatedness is established where acts have similar purposes, results, participants, victims,

---

[1] BMS further does not state facts indicating Mr. Baugues's physical use of the mail, phone lines, or internet in making the alleged misrepresentations. *See Foster*, 2010 U.S. App. LEXIS 2050, at *9-10 n. 5.

or methods of commission. *Id.* at 240-41. Here, BMS has not pled facts raising a plausible inference that Mr. Baugues's alleged racketeering activities are sufficiently related. As already noted, the scheme itself—Mr. Baugues's conduct in defrauding companies in order to purchase coal properties to use as leverage—is not detailed in count four. The Court cannot infer facts of similar purposes, results, participants, victims, or methods of commission of a fraudulent scheme where BMS does not identify those facts.

Further, the complaint does not identify how the alleged scheme relates to BMS's contract-related fraud allegations that form the basis of its case against Martin County. BMS was not trying to sell coal interests to Mr. Baugues or Martin County. It simply served as the effectuating agent for a transaction that seems to have otherwise gone smoothly. Indeed, BMS itself readily admits that the underlying lease on the O'Dell property was properly executed, and does not contend that there were underlying problems with that transaction other than those related to payment of the agency fee.

The complaint also fails to satisfy the RICO continuity requirement. Continuity is both a "closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241. Closed-ended continuity exists where a series of related predicates extends over a long period of time. *See id.* at 242. Open-ended continuity exists where the plaintiff alleges facts giving rise to a reasonable expectation that the racketeering activity will extend indefinitely into the future. *Id.* Here, BMS does not appear to claim that the scheme is close-ended. Rather, its allegations suggest that Mr. Baugues and Martin County have continuously defrauded investors in obtaining coal properties to use as leverage in order to purchase other properties which are in default.

"A plaintiff cannot demonstrate open-ended continuity if the racketeering activity has a 'built-in ending point, and the case does not present the necessary threat of long-term, continued criminal activity.'" *U.S. Airline Pilots Ass'n*, 615 F.3d at 318 (citing *G.E. Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 549 (4th Cir. 2001)). BMS has not stated facts giving rise to a plausible inference of a pattern of racketeering activity that would be likely to exceed indefinitely into the future because it has failed to identify *when* the predicate acts of Mr. Baugues and Martin County's fraudulent scheme occurred, and it has not identified the victims of the fraudulent conduct. On a Rule 12(b)(6) motion, the Court must take all factual inferences in favor of the plaintiff, but it is not required to accept vague and conclusory assertions that are not bolstered with detail.

In sum, the facts in this case do not support a plausible inference of relatedness or open-ended continuity. The defendants' motion to dismiss is **GRANTED** as to count four, and count four is therefore **DISMISSED**.

### C. Errors in the Amended Complaint

In the Court's December 6, 2010 Order denying the defendants' original motion to dismiss, it directed BMS's attention to the extensive spelling, formatting, and grammatical errors that render its amended complaint virtually incomprehensible. For this reason, in accordance with this opinion, the Court **ORDERS** that BMS re-file a new complaint with the following changes: First, BMS must remove count four from the complaint. Second, in order to facilitate the most efficient resolution of this dispute, BMS must correct the formatting, spelling, and grammatical errors in the complaint. The new complaint must be filed by **February 4, 2011.** This Order does not give leave to add any new claims or factual allegations.

### III. Conclusion

For these reasons, the defendants' motion to dismiss is **DENIED** as to count three, and **GRANTED** as to count four. Count four is **DISMISSED**. It is further **ORDERED** that the plaintiff re-file the complaint in a manner consistent with the instructions in this opinion.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: January 21, 2011

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE